**ORIGINAL**

# In the United States Court of Federal Claims

No. 16-357C
Filed: March 25, 2016

FILED
MAR 2 5 2016
U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * *
KENNETH LESLIE CALDWELL,

          Plaintiff,

v.

UNITED STATES,

          Defendant.
* * * * * * * * * * * * *

Kenneth Leslie Caldwell, Billings, MT, pro se.

## ORDER

**HORN, J.**

### FINDINGS OF FACT

The plaintiff, Kenneth Leslie Caldwell, filed a pro se complaint, in this court on March 21, 2016. Plaintiff's complaint begins:

> Pro se litigant Kenneth Leslie Caldwell presents this complaint against the United States regarding violations of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, violations of the Privacy Act of 1974, 5 U.S.C. § 552a, and violations of the 5th and 8th Amendments to the United States Constitution. The plaintiff wants money and preliminary injunction(s).

Plaintiff's complaint states that "[t]he plaintiff knows if there is refusal to take notice of important subject matter because of discrimination, it is contrary to the Anti-Discrimination Act of 1964, 42 U.S.C. § 2000a."[1] Of note, plaintiff continues: "The plaintiff knows it is

---

[1] Plaintiff's complaint also alleges that:

> The plaintiff knows that in 42 U.S.C. § 2000a (d) it is stated that discrimination or segregation by an establishment is supported by State

possible illegal aliens are in place of people who pretend to be citizens. The plaintiff also knows it is possible illegal aliens do illegal things in different sectors of industry. If illegal activities of illegal aliens are ignored, harm is possible."

Plaintiff also alleges that: "The plaintiff knows it is stated that no person shall be deprived of life, liberty, or property in the 5th Amendment to the United States Constitution. The plaintiff knows that late responses and/or other events presented in this complaint are violations of the 5th Amendment."[2]

In addition to the Civil Right Act and the Fifth Amendment, plaintiff cites to the Eighth Amendment to the United States Constitution, indicating that:

> The plaintiff knows it is stated in the 8th Amendment to the United States Constitution that excessive bail shall not be required and that there should not be infliction of cruel and unusual punishments. The plaintiff alleges excessive bail or cruel and unusual punishment was imposed when he was held in a case of which the plaintiff knows was based on false statements, where no one was hurt physically, but had charges which if he were convicted would serve a minimum mandatory of 15 years if convicted. The plaintiff knows he stated it was of national importance that he be released, but bail remained at $75,000 and the plaintiff was not released. The plaintiff knows this could be cruel and unusual because the plaintiff has seen more than one case from the same county that involved a threat or even successful weapon attack which did not show the person arrested to have the charge of the weapon enhancement charge that carries a minimum of 15 years mandatory upon conviction.

Despite the foregoing, it appears that an allegation in the complaint important to the plaintiff is that: "The plaintiff knows that in 2015, medical records of the plaintiff were given to attorneys of a defendant without the plaintiff's consent because he did not sign anything regarding the release of his health records except possibly in August 2015 if he signed to receive them himself." Plaintiff also alleges that, "[t]he plaintiff knows that the

---

action within the meaning of this subchapter if such discrimination or segregation ( 1) is carried on under color of any law, statute, ordinance, or regulation; or (2) is carried on under color of any custom or usage required or enforced by officials of the state or political subdivision thereof; or (3) is required by action of the State or political subdivision thereof. The plaintiff alleges that this law is relevant because the events that are described in this complaint involve the courts which might be considered public because they are used by the public. The plaintiff alleges other provisions of the Civil Rights Act of 1964, 42 U.S.C. g 2000a, might also be relevant.

[2] It not clear from the complaint how any late responses would violate the Fifth Amendment, but plaintiff refers to numerous other lawsuits he filed and alleges the other party either responded to his filings late or not at all.

2

documentation of his health information remained public until 1/21/2016. It might still be available to the public."

Regarding the merits of plaintiff's claims, the complaint states that:

The plaintiff knows that his complaint should not be denied for being frivolous, lacking merit, not having jurisdiction, having improper venue, or failure to state a grounds for relief, because the case is important if not for the life of the plaintiff, or for the life of others, is important because the very foundation of freedom and liberty in America is at risk of being broke down.

The complaint continues, "[t]he plaintiff had difficulty finding citation(s) that apply to this case. The process of searching for relevant citations was time consuming. It is a request to the court that any lack of citations be overlooked because statutes and facts are clearly legible, the plaintiff knows this case is important, and situations may be unprecedented."[3] For damages, "[t]he total amount of money the plaintiff demands for an instant preliminary injunction is $200,000, because irrefutable evidence for violations of the privacy Act of 1976, 5 U.S.C. 552a exists. It is important to the plaintiff that this be expedited. The plaintiff wants money and hopes that it can be given by ex parte order."

Plaintiff further indicates "[t]he plaintiff hopes for all the money he is entitled to. A bank account number of the plaintiff with the routing number is submitted with this Complaint for the deposit of $100,000 of the $200,000 preliminary injunction. The plaintiff has no preference on how he receives all remaining funds, as long as they are received in an expedited manner." In addition, plaintiff states that "[t]he plaintiff endures duress and sets forth a demand for judgment against the United States to have a permanent injunction to not be arrested, equivalent to diplomatic immunity. The plaintiff hopes the injunction can be granted by ex parte order as soon as possible."

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520–21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9–10 (1980); Estelle v. Gamble, 429

---

[3] Plaintiff also emphasizes in capital letters: "SOMETHING MUST BE DONE." (capitalization in original). Plaintiff also emphasizes that "[t]he plaintiff knows that it is possible that a complete lack of compassion exists for human life if it involves the plaintiff having success, which would be contrary to law. The plaintiff knows it is possible that no matter what, the plaintiff will lose if there exists an enemy that has power to keep him from success."

3

U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir. 2015), cert. denied 135 S. Ct. 1909 (2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253).

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990)); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012)

("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

Pursuant to the Rules of the United States Court of Federal Claims (RCFC) and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2015); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

> The Tucker Act grants jurisdiction to this court as follows:
>
> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision

6

of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation- does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

From the complaint, it appears that plaintiff has asserted violations of his constitutional rights under the Fifth and Eighth Amendments to the United States Constitution, violations of the Civil Rights Act, and violations of the Privacy Act. Insofar as plaintiff alleges a violation of his rights under the Fifth Amendment to the United States Constitution for "late responses and/or other events presented in this complaint," the United States Court of Appeals for the Federal Circuit has held that this court does not possess jurisdiction to consider claims arising under the Due Process Clauses of the Fifth and Fourteenth Amendments. See Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (citing LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995)) (no jurisdiction over a due process violation under the Fifth and Fourteenth Amendments); see also Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.) ("The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the

7

Tucker Act." (citing LeBlanc v. United States, 50 F.3d at 1028), cert. denied, 134 S. Ct. 259 (2013)); In re United States, 463 F.3d 1328, 1335 n.5 (Fed. Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for jurisdiction under the Tucker Act."), reh'g and reh'g en banc denied (Fed. Cir. 2006), cert. denied sub nom. Scholl v. United States, 552 U.S. 940 (2007); Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d 1327, 1334 (Fed. Cir. 2006); Collins v. United States, 67 F.3d 284, 288 (Fed. Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), reh'g denied (Fed. Cir. 1995); Mullenberg v. United States, 857 F.2d 770, 773 (Fed. Cir. 1988) (finding that the Due Process clauses "do not trigger Tucker Act jurisdiction in the courts"); Murray v. United States, 817 F.2d 1580, 1583 (Fed. Cir. 1987) (noting that the Fifth Amendment Due Process clause does not include language mandating the payment of money damages); Harper v. United States, 104 Fed. Cl. 287, 291 n.5 (2012); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012); McCullough v. United States, 76 Fed. Cl. 1, 4 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007) ("[N]either the Fifth Amendment Due Process Clause . . . nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."). Due process claims "must be heard in District Court." Kam–Almaz v. United States, 96 Fed. Cl. 84, 89 (2011) (citing Acadia Tech., Inc. & Global Win Tech., Ltd. v. United States, 458 F.3d at 1334), aff'd, 682 F.3d 1364 (Fed. Cir. 2012); see also Hampel v. United States, 97 Fed. Cl. at 238. Therefore, to the extent that plaintiff is attempting to allege violations of his Fifth Amendment rights, no such cause of action can be brought in this court.

Similarly, insofar as plaintiff's claims allege a violation of his rights under the Eighth Amendment to the United States Constitution for when he was "held in a case of which the plaintiff knows was based on false statements, where no one was hurt physically, but had charges which if he were convicted would serve a minimum mandatory of 15 years if convicted, this Amendment is not money-mandating and, therefore, jurisdiction to review these claims does not lie in this court. See Trafny v. United States, 503 F.3d 1339, 1340 (Fed. Cir. 2007) ("The Court of Federal Claims does not have jurisdiction over claims arising under the Eighth Amendment, as the Eighth Amendment 'is not a money-mandating provision.'") (citations omitted); see also Jiron v. United States, 118 Fed. Cl. 190, 199 (2014) ("Nor does the United States Court of Federal Claims have jurisdiction to adjudicate claims under the Fourth, Sixth, Seventh, Eighth, Ninth, and Tenth Amendments to the United States Constitution."); Sellers v. United States, 110 Fed. Cl. 62, 66 (2013); Tasby v. United States, 91 Fed. Cl. 344, 346 (2010) ("[T]he Eighth Amendment prohibitions of excessive bail or fines, as well as cruel and unusual punishment, are not money-mandating.") (citation omitted).

To the extent plaintiff is generally trying to allege a violation of his civil rights, the United States Court of Federal Claims lacks jurisdiction to hear claims alleging deprivation of civil rights under color of law. See Elkins v. United States, 229 Ct. Cl. 607, 608 (1981) ("[W]e do not have jurisdiction over claims based upon alleged violations of the civil rights laws.") (citation omitted); see also Wagstaff v. United States, 105 Fed. Cl. 99, 109 (2012);

May v. United States, 104 Fed. Cl. 278, 284 (2012), aff'd, 534 F. App'x 930 (Fed. Cir. 2013); Hanes v. United States, 44 Fed. Cl. 441, 449 (1999), aff'd, 243 F.3d 562 (Fed. Cir.), reh'g denied (2000); Sanders v. United States, 34 Fed. Cl. 75, 80 (1995), aff'd, 104 F.3d 376 (Fed. Cir.), reh'g denied, in banc suggestion declined (Fed. Cir. 1996) (the general civil rights claims alleged are not based on any money-mandating provisions, and do not give rise to liability for the United States), cert. denied, 522 U.S. 831, reh'g denied, 522 U.S. 1036 (1997); Blassingame v. United States, 33 Fed. Cl. 504, 505, aff'd, 73 F.3d 379 (Fed. Cir. 1995), reh'g denied (Fed. Cir.), cert. denied, 517 U.S. 1237 (1996).

Moreover, regarding plaintiff's contention that "[t]he plaintiff alleges other provisions of the Civil Rights Act of 1964, 42 U.S.C. g 2000a, might also be relevant, this court does not have subject matter jurisdiction over actions arising under sections of the Civil Rights Acts, including 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. See Pikulin v. United States, 97 Fed. Cl. 71, 77 (2011) ("Plaintiff also cites various provisions of the Civil Rights Acts, including §1981, §1983, §1985, and §1986, as bases for his claim. The court does not possess jurisdiction to entertain claims based on these statutes." (citing Marlin v. United States, 63 Fed. Cl. 475, 476 ("[T]he Court does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985 because jurisdiction over claims arising under the Civil Rights Act resides exclusively in the district courts."), appeal dismissed, 140 F. App'x 256 (Fed. Cir. 2005), and Anderson v. United States, 22 Cl. Ct. 178, 179 n. 2 (1990) (noting that the United States Claims Court lacked jurisdiction to entertain claims under § 1983, § 1985(3), and § 1986), aff'd, 937 F.2d 623 (Fed. Cir. 1991) (unpublished table decision)), appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011)); Hubbard v. United States, 80 Fed. Cl. 282, 283 (noting that the Civil Rights Act encompasses 42 U.S.C. § 1988), aff'd, 315 F. App'x 307 (Fed. Cir. 2009); Schweitzer v. United States, 82 Fed. Cl. 592, 595 (2008) ("Likewise, this court does not have jurisdiction over the plaintiffs' civil rights claims brought under 42 U.S.C. §§ 1983, 1985 or 1986 (2000), because it is well-settled that jurisdiction over such claims lies exclusively in the district courts." (citing Stamps v. United States, 73 Fed. Cl. 603, 609-10 (2006) (citing Anderson v. United States, 22 Cl. Ct. at 179)); Salman v. United States, 69 Fed. Cl. 36, 39 n.3 (2005) ("Plaintiff has also alleged unlawful prosecution on the part of the government, but has cited no money-mandating source of law that would afford him compensation for this alleged behavior of the government. Inasmuch as plaintiff's allegation might refer to the civil rights violations proscribed by 42 U.S.C. § 1983 (2000), this court has no jurisdiction over section 1983 claims." (citing Berdick v. United States, 222 Ct. Cl. 94, 612 F.2d 533, 536 (1979); Marlin v. United States, 63 Fed. Cl. at 476 (stating that this "[c]ourt does not have jurisdiction to consider civil rights claims brought pursuant to 42 U.S.C. §§ 1981, 1983, or 1985 because jurisdiction over claims arising under the Civil Rights Act resides exclusively in the district courts") (citations omitted)).

Likewise, this court does not have jurisdiction over plaintiff's claims under the Privacy Act. The Privacy Act, at 5 U.S.C. § 552a(g)(1) (2012), provides "the district courts of the United States shall have jurisdiction" over civil actions concerning the relevant statute. 5 U.S.C. § 552a(g)(1); see also Rebish v. United States, 120 Fed. Cl. 184, 188 (2016) ("To the extent that Mr. Rebish intended to allege that the Bureau committed violations of the Privacy Act, jurisdiction over such a claim would lie in district court, not

9

the Court of Federal Claims." (citing 5 U.S.C. § 552a(g)(1))); see also Madison v. United States, 98 Fed. Cl. 393, 395 (2011), Treece v. United States, 96 Fed. Cl. 226, 232 (2010); Stephanatos v. United States, 81 Fed. Cl. 440, 444–45 (2008); Parker v. United States, 77 Fed. Cl. 279,291-92 (2007), aff'd, 280 F. App'x 957 (Fed. Cir. 2008).

To the extent plaintiff cites the Privacy Act because, as he alleges, "the medical records of the plaintiff were given to attorneys of a defendant without the plaintiff's consent, this court does not possess jurisdiction over claims that sound in tort. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. at 238; Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); McCullough v. United States, 76 Fed. Cl. at 3; Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). Therefore, to the extent any of plaintiff's claims sound in tort, those claims must be dismissed.

As noted above, "[t]he total amount of money the plaintiff demands for an instant preliminary injunction is $200,000, because irrefutable evidence for violations of the privacy Act of 1976, 5 U.S.C. 552a exist," and "[t]he plaintiff endures duress and sets forth a demand for judgment against the United States to have a permanent injunction to not be arrested, equivalent to diplomatic immunity. The plaintiff hopes the injunction can be granted by ex parte order as soon as possible." The Federal Circuit has explained that the Court of Federal Claims "does not have general equity jurisdiction to grant injunctive relief." Shemonsky v. United States, 215 F.3d 1340 (Fed. Cir. 1999) (upholding decision of the Court of Federal Claims that the court's jurisdiction did not extend to injunctive or declaratory relief); see also Bank of Guam v. United States, 578 F.3d 1318, 1331 (Fed. Cir.) reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003); Choate v. United States, 60 F.3d 840 (Fed. Cir. 1995) (holding that "[t]he Tucker Act does not provide a means by which the Court of Federal Claims may grant injunctive or declaratory relief where the suit does not involve a pre-award protest or the application of section 7428 of the Internal Revenue Code"). As stated by the Federal Circuit:

> The Court of Federal Claims has never been granted general authority to issue declaratory judgments, and to hold that the Court of Federal Claims may issue a declaratory judgment in this case, unrelated to any money claim pending before it, would effectively override Congress's decision not

10

to make the Declaratory Judgment Act applicable to the Court of Federal Claims.

Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716–17 (Fed. Cir.1998); see also United States v. Tohono O'Odham Nation, 563 U.S. 307 (2011) (The United States Court of Federal Claims "has no general power to provide equitable relief against the Government or its officers."). Moreover, in an action brought under 28 U.S.C. § 1491(a), this court can only provide declaratory or injunctive relief "as an incident of and collateral to" a judgment for money damages. 28 U.S.C. § 1492(a)(2); see also Taylor v. United States, 113 Fed. Cl. 171, 173 (2013) (holding that the Tucker Act does not provide independent jurisdiction over claims for injunctive relief in contractual dispute cases). For example, in a case brought under the Tucker Act that did not involve a pre-award protest, once the Court of Federal Claims determined that it did not have jurisdiction to hear a plaintiff's claims for money damages, it necessarily followed that the court did not have authority to hear that plaintiff's claims for injunctive relief. See Kanemoto v. Reno, 41 F.3d 641, 645 (Fed. Cir. 1994); see also Taylor v. United States, 113 Fed. Cl. at 173. Accordingly, plaintiff's demands for declaratory relief are dismissed for lack of jurisdiction.

Finally, plaintiff did not pay the filing fee, nor did he file a motion to proceed in forma pauperis. Plaintiff may have realized that a motion to proceed in forma pauperis may not have been successful, as a 2016 decision in the District Court for the District of Montana concluded, "Caldwell has failed to provide sufficient financial information, his Complaint is frivolous, and venue is improper. The motions to proceed in forma pauperis should therefore be denied and this matter dismissed." Caldwell v. United States, Case No. 15-132, Dkt. 11 (D. Mont. Jan. 26, 2016).[4] Before plaintiff may file suit again in this

---

[4] Plaintiff refers to this decision in his complaint before this court indicating that:

> The plaintiff has knowledge of a notice being "dismissed", although it was typed .Notice of Genocide" on page 2 of document 11 of case # 1:15-cv-00132-SPW-CSO of the United States District Court for the District of Montana. The plaintiff does not know how there is justice in dismissing the Notice of Genocide". The plaintiff has an African-American relative that died in the later part of February 2016 (breathing problems), after Notice of Genocide was not granted. The plaintiff suffers from breathing problems himself.

The court notes that, in addition to the District Court of Montana case, five other case plaintiff filed in federal court have been dismissed. See Caldwell v. Bonneville Cnty., Case No. 4:13-cv-00004 (D. Idaho Oct. 11, 2013) (dismissing amended complaint with prejudice as frivolous and for failure to state a claim); Caldwell v. Post Co., Case No. 4:12-cv-00621 (D. Idaho Aug. 12, 2013); Caldwell v. Sessions, Case No. 4:12-cv-00635 (D. Idaho June 7, 2013); Caldwell v. Post Co., Case No. 4:12-cv-00596 (D. Idaho Feb. 14, 2013); Caldwell v. Idaho, Case No. 4:09-cv-00561 (D. Idaho June 3, 2010), dismissed (9th Cir. Sept. 8, 2010), cert. denied (U.S. Oct. 11, 2011). Additionally, plaintiff has a

court, plaintiff shall pay the filing fee for this case or any other case, or file a proper motion to proceed in forma pauperis.

## CONCLUSION

For the foregoing reasons, plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

**IT IS SO ORDERED.**

_____
**MARIAN BLANK HORN**
**Judge**

---

pending suit in the United States District Court for the Northern District of Illinois, filed on December 18, 2015, See Caldwell v. United States, Case No. 15-11444 (N.D. Ill. Dec. 18, 2015),